IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMERCE HOME MORTGAGE LLC,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN BANK OF SAN FRANCISCO,<br><br>Defendant. | Case No. 21-cv-01678-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Before the Court is plaintiff Commerce Home Mortgage, LLC's ("Commerce") Motion to Remand, filed March 26, 2021. Defendant Federal Home Loan Bank of San Francisco ("FHLB-SF") has filed opposition, to which Commerce has replied. Additionally, the Federal Housing Finance Agency ("FHFA"), with leave of court, has filed an amicus brief, to which Commerce has replied. Having read and considered the parties' respective written submissions, the Court hereby rules as follows.[1]

**BACKGROUND**

The following factual allegations are taken from Commerce's Complaint, initially filed in state court on January 15, 2021, and removed by FHLB-SF on March 9, 2021.

Commerce is a "mortgage banking company that is certified by the United States Department of Commerce" as a "Community Development Financial Institution" ("CDFI"). (See Compl. ¶¶ 2, 10.) One of Commerce's "primary purposes" is "to provide financing to underserved and underbanked borrowers . . ., including Black, Latino/Hispanic[,] and low income borrowers and communities." (See Compl. ¶ 10.) FHLB-SF "is a member-owned

---

[1] By order filed May 18, 2021, the Court took the matter under submission.

cooperative wholesale bank and part of the Federal Home Loan Bank system."[2] (See Compl. ¶ 15.) Seeking "to utilize FHLB-SF's access to capital markets to support new lending to Commerce's customer base," Commerce, in 2018, "applied for membership in FHLB-SF"; on December 18, 2018, in a written "Decision Resolution," FHLB-SF stated Commerce's application was "approve[d]." (See Compl. ¶¶ 18, 23, 28.)

In conformity with its requirement that members "provide capital to [FHLB-SF] by purchasing stock," FHLB-SF, on December 21, 2018, "asked Commerce to immediately fund its stock purchase requirement," which FHLB-SF calculated to be $450,000 (see Compl. ¶¶ 24, 26), and "told Commerce it would quickly get access to its [credit] facility" once it fulfilled its stock purchase requirement (see Compl. ¶¶ 28, 29). On December 24, 2018, Commerce purchased $450,000 in FHLB-SF's stock. (See Compl. ¶ 27.) FHLB-SF, however, did not thereafter open a credit facility for Commerce; rather, FHLB-SF "came up with numerous excuses" for not doing so, such as "cit[ing] 'internal issues'" or "lament[ing] that meetings during which the credit facility was to be approved were accidentally missed or unexpectedly cancelled." (See Compl. ¶ 29.)

On April 29, 2019, FHLB-SF "advised Commerce that[,] despite delays in opening the credit facility, Commerce had to keep up with its capital requirements in order to stay in good standing with [FHLB-SF's] membership requirements," and, in particular, that Commerce was required to "purchase an additional $643,000 of FHLB-SF stock." (See Compl. ¶ 44.) Although Commerce, on April 30, 2019, purchased $643,300 in FHLB-SF's stock (see Compl. ¶ 44),[3] FHLB-SF "continued to delay extending Commerce any credit, or[,] for that matter, any services at all" (see Compl. ¶ 44-45).

On September 20, 2019, FHLB-SF advised Commerce by letter that it had

---

[2] The Federal Home Loan Bank system "was created by Congress in 1932 to provide a reliable source of funds to homebuyers." See Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco, 792 F.2d 1432, 1434 (9th Cir. 1986).

[3] The Complaint does not explain the difference between the amount required and the amount paid.

2

rescinded its prior approval of Commerce's membership and deemed Commerce's membership in FHLB-SF to be "null and void." (See Compl. ¶ 47; see also FHFA's Brief Ex. 1.) Attached to the letter was "correspondence" from the FHFA, stating the FHFA's agreement with FHLB-SF's determination that Commerce had not "satisf[ied] the operating liquidity ratio requirement when it applied for membership." (See id.) In January 2020, Commerce "reapplied for membership," which application was denied by FHLB-SF on May 20, 2020, on the ground that, as described by Commerce, "FHLB-SF did not believe that Commerce met the liquidity test set forth in Section 1263.16(b)(2)(iv)." (See Compl. ¶¶ 55-56.)[4]

Based on the above allegations, Commerce asserts three Causes of Action, titled, respectively, "Fraud," "Violations of California Business & Professions Code section 17200, et seq," and "Breach of Contract."

**DISCUSSION**

As noted, FHLB-SF removed the above-titled action to federal court. In its notice of removal, FHLB-SF asserts federal jurisdiction exists under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. Although, as FHLB-SF acknowledges, Commerce brings its claims under state law, each such claim, according to FHLB-SF, "necessarily raise[s] substantial questions arising under the laws of the United States." (See Notice of Removal ¶ 7.)

Before addressing whether federal jurisdiction exists under § 1331, however, the Court first considers an argument, raised by the FHFA, specifically, its contention that the

---

[4] 12 C.F.R. § 1263.16(b)(2)(iv) requires a CDFI, such as Commerce, to show it "has an operating liquidity ratio of at least 1.0 for the four most recent quarters, and for one or both of the two preceding years, where the numerator of the ratio includes unrestricted cash and cash equivalents and the denominator of the ratio is the average quarterly operating expense." See 12 C.F.R. § 1263.16(b)(2)(iv). As interpreted by the FHFA, the term "unrestricted cash and cash equivalents" does not include specified types of assets, and, in the instant case, FHLB-SF found Commerce had included "ineligible items" in the numerator of the ratio set forth in its application. (See FHFA's Brief Ex. 1.)

instant motion should be denied on grounds of futility. In particular, the FHFA states that, if the case is remanded to state court, it "will move to intervene in that court and then remove the action back to federal court." (See FHFA's Brief at 9:23-27); see also 28 U.S.C. § 1442(a)(1) (providing civil action brought against federal agency is removable to federal district court). A motion to remand can only be denied on futility grounds, however, "where there is absolute certainty that remand would prove futile." See Bell v. City of Kellogg, 922 F.2d 1418, 1425 (9th Cir. 1991). Here, the FHFA has not shown it is absolutely certain the state court will grant its motion to intervene, and, consequently, the FHFA has not shown remand is futile. The question thus remaining is whether federal jurisdiction exists as to any of Commerce's state law claims.

In that regard, as the Supreme Court has explained, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." See Gunn v. Minton, 568 U.S. 251, 258 (2013).

In the instant case, FHLB-SF bears the burden of making the above-referenced showing. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (holding "defendant always has the burden of establishing that removal is proper"). In determining whether FHLB-SF has done so, the Court addresses below each of Commerce's claims, in turn.

**A. First Cause of Action**

In the First Cause of Action, Commerce asserts a claim of fraud based on the theory that, after FHLB-SF granted Commerce's membership application, FHLB-SF promised to provide membership benefits to Commerce, but, in actuality, FHLB-SF "never intended to extend Commerce the same benefits it provides its other member organization," and that its promises were "merely a premise for FHLB-SF to convince Commerce to pay FHLB-SF the money FHLB-SF demanded." (See Compl. ¶¶ 65-66.)

As noted, Commerce alleges FHLB-SF, in December 2018, initially found Commerce met the membership requirements, but, nine months later, determined Commerce had not in fact met those requirements. FHLB-SF argues that, to establish a

4

fraud claim, Commerce will have to prove it met all the requirements for approval of membership, including the "liquidity ratio" requirement set forth in the Code of Federal Regulations, specifically, 12 C.F.R. § 1263.16(b)(2)(iv), the requirement FHLB-SF, in September 2019, found Commerce had not met.

In support of remand, Commerce argues its fraud claim is not dependent on a showing that at the time it was approved by FHLB-SF, it, in fact, met the membership requirements. The Court agrees. As described above, FHLB-SF's statements of approval and promises to extend membership benefits to Commerce were, under Commerce's theory of the case, made with an intent to deceive, irrespective of whether Commerce did or did not actually qualify. Consequently, the fraud claim does not necessarily raise a federal issue.

Accordingly, FHLB-SF has failed to show the Court has federal jurisdiction over Commerce's fraud claim.

**B. Second Cause of Action**

In the Second Cause of Action, Commerce alleges the assertedly fraudulent scheme on which the First Cause of Action is based "constitutes unfair, unlawful, and/or fraudulent business practices" that violate § 17200. (See Compl. ¶¶ 73, 74.) For the reasons stated above, the Court finds such derivative claim, like the claim on which it is based, does not necessarily raise a federal issue. As an additional ground for removal, however, FHLB-SF contends Commerce's § 17200 claim "seeks to regulate in a field in which state law is completely preempted." (See Def.'s Opp. at 12:3-4.)[5]

As Commerce points out, courts recognize two types of preemption, "complete" and "defensive." See Retail Property Trust v. United Brotherhood of Carpenters & Joiners, 768 F.3d 938, 946 (9th Cir. 2014). Commerce argues the form of preemption on which FHLB-SF relies is defensive, not complete. As set forth below, the Court agrees.

Complete preemption exists where "a federal statute wholly displaces [a] state-law

---

[5] FHLB-SF does not raise this argument as to Commerce's other claims.

cause of action," i.e., a federal statute "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." See Beneficial National Bank v. Anderson, 539 U.S. 1, 8 (2003). In such cases, the plaintiff's complaint is removable, as the "complete preemption doctrine recharacterizes a complaint with state law claims into one arising under federal law." See Stewart v. U.S. Bancorp., 297 F.3d 953, 958 (9th Cir. 2002) (internal quotation and citation omitted) (finding claim for denial of benefits under employee welfare benefit plan properly recharacterized as ERISA claim).

By contrast, defensive preemption exists where, inter alia, "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." See National Federation of the Blind v. United Airlines Inc., 813 F.3d 718, 724 (9th Cir. 2016). In such cases, however, the state law claim remains a claim arising under state law, albeit one subject to dismissal as preempted, and, consequently, is not removable. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (holding "case may not be removed to federal court on the basis of a federal defense, including the defense of preemption").

Here, FHLB-SF does not identify any federal statute that provides the "exclusive cause of action" for the unfair competition claim asserted by Commerce, let alone that such statute sets forth the "procedures and remedies governing that cause of action." See Beneficial National Bank, 539 U.S. at 8. Rather, FHLB-SF points to "the extensive, detailed regulations governing FHLB membership eligibility, coupled with the power Congress conferred upon [the] FHFA" (see Def.'s Opp. at 11:20-22), which circumstances, contrary to FHLB-SF's argument, may support defensive, but not complete, preemption, see National Federation of the Blind, 813 F.3d at 724.

Accordingly, FHLB-SF has failed to show the Court has federal jurisdiction over Commerce's § 17200 claim.

**C. Third Cause of Action**

In the Third Cause of Action, Commerce alleges FHLB-SF's rescission of its prior

determination that Commerce was entitled to membership constituted a breach of the parties' Advances and Security Agreement ("Agreement"). (See Compl. ¶ 78-80.) Specifically, Commerce alleges, FHLB-SF's "actions in rescinding Commerce's membership" constituted a breach of § VI(A)(12). (See Compl. ¶ 80.)

Section VII(A)(12) reads as follows:

(A) Upon the occurrence of and during the continuance of any of the following events or conditions of default . . ., the Bank[6] may in its discretion, by a notice to the Member, (a) notwithstanding any other provision of this Agreement, declare all Indebtness . . . to be immediately due and payable, without presentment, demand, protest, or any further notice, and (b) notwithstanding any other provision in this Agreement, terminate any obligation on the part of the Bank in respect of any Commitment or to make or continue any Advances:

. . .

(12) The Bank reasonably and in good faith determines that a material adverse change has occurred in the financial condition of the Member or in the Collateral from that disclosed previously to the Bank[.]

(See Compl. Ex. A at 15-16.)

As noted, FHLB-SF rescinded its prior determination on the ground Commerce had not shown it met the liquidity ratio requirement set forth in the Code of Federal Regulations. Commerce's breach of contract claim, however, does not require a determination as to whether FHLB-SF properly applied the federal regulations to Commerce's membership application. Rather, Commerce's claim is based, in essence, on the theory that once FHLB-SF had approved Commerce's application, FHLB-SF's ability to rescind that approval was limited to the above-quoted circumstances in the Agreement, namely, a material adverse change in Commerce's financial condition or its collateral.

As to that issue, i.e., one requiring interpretation of the Agreement, FHLB-SF has not identified any governing federal statute or regulation. Rather, relying on the general principle that federal question jurisdiction exists over "claims founded upon federal

---

[6] The Agreement defines "the Bank" as FHLB-SF. (See Compl. Ex. A at 1.)

7

1 common law," see Illinois v. City of Milwaukee, 406 U.S. 91, 100 (1972), FHLB-SF
2 contends Commerce's breach of contract claim is founded upon federal common law in
3 light of a choice-of-law provision in the Agreement. That provision reads, in relevant part,
4 as follows:

> This Agreement and all Advances and Commitments made under this Agreement will be governed by the statutory and common law of the United States, and, to the extent federal law incorporates or defers to state law, the laws of the State of California (excluding, however, the conflict of law rules of the State of California).

(See Compl. Ex. A ¶ XII.)

FHLB-SF has not, however, cited to any federal common law governing interpretation of the Agreement nor has it identified any federal law, either common or statutory, incorporating state law as to contract interpretation. Cf. e.g., Fed. R. Civ. P. 4(e) (setting forth manner in which service of process can be accomplished; listing, along with various procedures identified therein, service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"). In the absence thereof, Commerce's breach of contract claim will, according to the above-quoted contract language, be resolved by deferring to the laws of the State of California. In short, the cited provision does not more than "recognize a truism," namely, "federal law applies where it exists, and, otherwise, state law governs." See Michigan Finance Authority v. Kiebler, 2013 WL 3938507, at *4 (W.D. Mich. July 30, 2013).[7]

Accordingly, FHLB-SF has failed to show the Court has federal jurisdiction over Commerce's breach of contract claim.

---

[7] To the extent FHLB-SF relies on World Savings & Loan Ass'n v. Federal Home Loan Bank of San Francisco, 2002 WL 1941155 (N.D. Cal. August 19, 2002), wherein this Court found the version of the Agreement then in existence "provide[d] that Federal common law governs disputes arising thereunder," see id. at *3, the Court concludes such finding does not resolve the issue presented in the instant case. There, the Court raised the question of jurisdiction sua sponte, and even assuming the Agreement, at that time, contained the same choice-of-law provision as is found in the version here at issue, neither party therein pointed to the language providing for deferral to state law.

8

## CONCLUSION

For the reasons stated, Commerce's motion to remand is hereby GRANTED, and the case is hereby REMANDED to the Superior Court of the State of California, in and for the County of San Francisco.

**IT IS SO ORDERED.**

Dated: May 24, 2021

_____
MAXINE M. CHESNEY
United States District Judge